OPINION OF THE COURT
George M. Heymann, J.
The petitioner/landlord, 466 Associates, has moved this court for the appointment of a guardian ad litem for the respondent/tenant Thomas Murray, on the grounds that he is not capable of adequately defending himself in this proceeding.
*473 This proceeding involves a dispute between the parties over the possession of apartment No. 2 rear located at 468 Avenue of the Americas, New York, N. Y.
The petitioner initially commenced a nonpayment proceeding (L&T index No. 60545/90) in February 1990. Upon respondent’s default an inquest was scheduled for April 26, 1990 before Honorable Joan Lobis. On the scheduled inquest date, Judge Lobis advised petitioner’s counsel that "she had just received a bizarre correspondence from Mr. Murray which convinced her that he was not competent to deal with the dispossess proceeding.” On May 24, 1990 the court contacted Protective Services For Adults (PSA). On July 24, 1990 the court entered a final judgment after inquest — warrant stayed 10 days after service of a copy of the judgment upon respondent and upon PSA and filing proof of service with the clerk of the court.
In August 1990, petitioner commenced a holdover proceeding (L&T index No. 93934/90). This matter was dismissed on August 23, 1990 on the nonappearance of either side.
In September 1990, another holdover proceeding was brought by the petitioner (L&T index No. 104808/90), which was thereafter discontinued without prejudice when the respondent, appearing pro se, agreed to become a client of PSA.
A third holdover proceeding (L&T index No. 54735/91) was instituted by the petitioner in January 1991, which was marked off calendar in March 1991. The respondent did not appear in this proceeding.
Each of these holdover proceedings was based on the grounds that the respondent’s actions in his apartment created a nuisance.
In February 1991, Mr. Murray was admitted to Bellevue. Petitioner claims he was advised by PSA and representatives at Bellevue that respondent would be receiving permanent care at Bellevue or someplace else. Based on this information, petitioner submits that he believed that respondent would not be returning to the apartment and changed the locks.
At the request of PSA the Legal Aid Society became engaged as counsel for the respondent.
In April 1991, counsel for the respondent brought an order to show cause under L&T index No. 60545/90 (the nonpayment proceeding) to regain possession of the apartment. The petitioner argues that the nonpayment proceeding is no longer pending and, thus, the court lacks jurisdiction to determine *474 the motion.[1] As a result, respondent brought a new order to show cause (L&T index No. 15530/91 under the caption Thomas Murray, Petitioner, against 466 Associates, Respondent), seeking the same relief and moved to consolidate the matters.
On April 24, 1991 the petitioner/landlord cross-moved on the original index number for the appointment of a guardian ad litem.
In support of said motion, petitioner has annexed four affidavits, including one from a board-certified psychiatrist (who reviewed certain material pertaining to the respondent but did not base his affidavit on personal contact with the respondent) and one from a tenant who lives in the apartment directly above the respondent. These affidavits allege, inter alla, that the respondent has a severe mental disorder (paranoid schizophrenia chronic, type 296.3); that he is not capable of living by himself in an apartment; that he keeps his apartment in a state of chaos and filth, which presented a health hazard to both himself and other tenants; that he is capable of setting a fire in his apartment (a previous fire in his apartment occurred on Jan. 1, 1989) and that his conduct was affecting the other tenants in the building.
Counsel for the petitioner contends that a guardian ad litem is necessary to assist Mr. Murray in the defense and prosecution of these cases and that without such an appointment any judgment or settlement would be voidable.
In opposition to the instant motion, respondent’s attorney avers that although he believes petitioner’s attorney is raising the issue in good faith, his client is capable of returning to his apartment based on his present treatment and has expressed a desire to do so. He feels there is no need for a guardian ad litem since the respondent is cooperating with him.[2]
The two issues that must now be addressed by this court are: (I) whether the Housing Court has the jurisdiction to appoint a guardian ad litem and (II) whether a guardian ad litem should be appointed.
*475 I.
Not only does there appear to be no hard and fast rule as to the Housing Court’s jurisdiction to appoint a guardian ad litem, the subject itself has generated a great deal of controversy. Ironically, on the very day that petitioner moved this court for such relief (Apr. 24, 1991) a decision by Judge Solomon, Civil Court, New York County, appeared in the New York Law Journal wherein the court "decline[d] to appoint a guardian ad litem because this Court has no jurisdiction to make capacity/competency decisions.” (Silgo 22nd St. Assocs. v Hennies, NYLJ, Apr. 24, 1991, at 22, col 6, citing and relying on 1199 Hous. Corp. v Jackson, NYLJ, Mar. 20, 1991, at 22, col 6, and Zuckerman v Burgess, NYLJ, Mar. 13, 1991, at 22, col 3, also decided by Judge Solomon.)
While the law is clear that issues of competency which may result in the appointment of a conservator or committee are within the sole province of the Supreme Court, it is the opinion of this court that the Housing Court does have the jurisdiction to appoint a guardian ad litem for the limited purpose of appearing for a party during the particular litigation at hand. (See, Siegel, NY Prac § 196 [2d ed].)
CPLR 1201 provides for the appointment of a guardian ad litem for "an adult incapable of adequately prosecuting or defending his rights.”
CPLR 1202 provides in pertinent part:
"(a) By whom motion made. The Court in which an action is triable may appoint a guardian ad litem at any stage in the action upon its own initiative or upon the motion of * * *
"3. any other party to the action if a motion has not been made under paragraph one or two within ten days after completion of service.”
As noted in Siegel (id., § 194, at 285-286): "If the person has not been adjudicated an incompetent or conservatee, but appears to be 'incapable of adequately prosecuting or defending his rights’, a guardian ad litem may be appointed. It is not a good idea for one party to proceed against another if he knows the other to be incapable of looking after his rights, despite the absence of a formal adjudication to that effect. * * * Without such a guardian, a judgment against D may be in jeopardy even if D purported to appear by an attorney of his own choosing, apparently on the theory that D lacked even the competence to choose.”
It is interesting to note that while drawing the opposite *476 conclusion in her decisions, Judge Solomon stated the following in 1199 Hous. Corp. v Jackson (supra, at 23, col 1): "The Commissioner [of Department of Social Services] is correct that Article 12 of the CPLR permits the appointment of a guardian ad litem to appear for 'an adult incapable of adequately prosecuting or defending his rights’ * * * and that this court has the power to make such an appointment.” (Emphasis added.)
In 1199 Hous. Corp. (supra), the court was concerned about whether a guardian ad litem could do that which the Commissioner claimed it can and should do to assist the tenant/ respondent: i.e., to determine his abilities to handle his affairs, to act as his agent to seek financial assistance to cover his arrears and to secure future benefits to prevent subsequent eviction proceedings.[3]
While it may not be the function of a guardian ad litem to oversee a tenant’s affairs long-term and to assist in making financial decisions, etc., as a conservator or committee would be empowered to do in a proper case, that does not diminish the necessity of such guardian ad litem in assisting the court, where the situation requires it, to ascertain whether such tenant adequately understands the circumstances surrounding the pending litigation and the consequences that may flow from it.
The statutory authority for the appointment of a guardian ad litem in Civil Court is clear. In fact, it was held in New York City Hous. Auth. v Hart (147 Misc 2d 56) that the Civil Court had the authority to appoint guardians ad litem in summary nonpayment proceedings. There, the court appointed a guardian ad litem for the children of respondents who had failed to appear in the nonpayment proceedings to prevent the children from becoming homeless. CPLR 1201, which provides for the appointment of a guardian ad litem for infants, is the same provision for appointing one for "an adult incapable of adequately prosecuting or defending his rights.”
This court concludes that it has the "inherent power” to appoint a guardian ad litem, especially in situations such as *477 this where the tenant is confined to a mental hospital. (See, Kalimian v Driscoll, NYLJ, Mar. 6, 1991, at 22, col 3, citing Rakiecki v Ferenc, 21 AD2d 741; 2 Rasch, New York Landlord and Tenant — Summary Proceedings § 38:3 [3d ed]; see also, 90-493 Daejan [N.Y.] v Cohen, NYLJ, Apr. 11, 1991, at 24, col 1 [App Term, 1st Dept], where the Appellate Term affirmed the appointment of a guardian ad litem by the Housing Court [Spires, J.], during trial due to appellant’s " 'want of understanding’ ”.)[4]
II.
Having concluded that jurisdiction exists to appoint a guardian ad litem the court now directs its attention to the issue of whether one should be appointed.
Counsel for the respondent/tenant opposes such appointment on the grounds that he has been able to fully communicate with his client and that he desires to pursue the actions taken by his attorney to restore him to possession of his apartment.
Both sides have indicated that the respondent has been examined by psychiatrists for each party, maintaining that different conclusions have been drawn as to his present condition.
In Rand v Lockwood (65 Misc 2d 182, 183) the court held: "The papers submitted in support of the application present a strong evidentiary showing that at the time the action was commenced and at the time the default judgment was entered, the decedent David D. Tiffany, although not judicially declared an incompetent, was 'an adult incapable of adequately prosecuting or defending his rights’ (CPLR 1201). As such, he should have been represented in the action by a guardian ad litem and, indeed, it is questionable whether any appearance by the defendant Tiffany either pro se or by an attorney, without the appointment of a guardian ad litem, would have been authorized (cf. CPLR 321, subd. [a]).”
In the case at bar, the court does not question the sincerity *478 of the respondent’s counsel in his belief that his client is competent to proceed with this matter or counsel’s ability to represent him. However, based on the history of the parties’ relationship with each other, the seriousness of the prior events occasioned by the respondent, and the fact that the respondent has not personally appeared before this court due to his confinement in Bellevue, this matter will be set down for a hearing at a mutually convenient time to the court and parties to determine whether a guardian ad litem should be appointed.

. According to counsel for petitioner, the respondent paid all the rent in arrears and the proceeding was discontinued. Counsel for respondent claims that this matter was not discontinued. This court has not found any notations on the file or in the computer to verify that said proceeding (L&T index No. 60545/90) has been discontinued.

. Respondent’s counsel is not contesting service of the instant motion. (See, CPLR 1202.)

. In Zuckerman v Burgess (NYLJ, Mar. 13, 1991, at 22, col 3) and Silgo 22nd St. Assocs. v Hennies (NYLJ, Apr. 24, 1991, at 22, col 6) the court found no affidavit of service on the respondent and no sworn statements by anyone with personal knowledge of the respondent’s circumstances. Thus, even had the court found that it did have jurisdiction to appoint a guardian ad litem, the requests would probably have been denied on procedural grounds.

. See CCA 110 (c) which enables the Housing Court to "recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards, if it believes they will be more effective to accomplish compliance or to protect and promote the public interest” (emphasis added). This section gives the court broad authority to discharge its duties, which, when read in conjunction with the CPLR supports the conclusion that jurisdiction is conferred upon this court to appoint a guardian ad litem.