OPINION OF THE COURT
Marc Finkelstein, J.
In accordance with the decision and order of July 10, 1995, the court indicated that it had two motions before it: (1) pro se motion brought by June Raff, wife of respondent Norman Raff, seeking an extension of time to pay arrears pursuant to stipulations between the parties, due to her husband being totally disabled and Protective Services for Adults (PSA) being involved in her case; (2) order to show cause brought by the Corporation Counsel on behalf of the Department of Social Services/Protective Services for Adults (DSS/PSA) seeking, inter alia, appointment of a guardian ad litem pursuant to CPLR 1201 to protect the rights and interests of Norman Raff, alleging that the health of both Norman Raff and June Raff is such that they cannot adequately defend their rights in this proceeding.
In its July 10, 1995 decision the court, inter alia, held in abeyance the guardian ad litem motion and, based upon the appearance of counsel for DSS/PSA and Mrs. Raff and a discussion of the Raffs’ application for emergency assistance funds to pay arrears, the court directed respondent to pay July rent by August 1, 1995 and August rent by August 31, 1995 and afforded respondent until August 31, 1995 to pay the remaining arrears of $5,602.56 through June 1995. The matter was adjourned to August 31, 1995.
Unfortunately, on August 31 the court was informed by Corporation Counsel that Norman Raff had passed away and that Mrs. Raff was not present as she was attending her husband’s funeral. As a result, the matter was adjourned to September 20, 1995.
On September 20, 1995, Mrs. Raff appeared along with an attorney for DSS. The court was informed that Mrs. Raff was the beneficiary of a life insurance policy as a result of her *353 husband’s employment with the Immigration Service, the proceeds of which were some $21,000, and that Mrs. Raff was attempting to secure these funds and pay the arrears. Counsel for DSS/PSA requested appointment of a guardian ad litem for June Raff on the grounds that although she is mentally competent, the death of her husband as well as other "subclinical” manifestations render it difficult for her to take the appropriate actions on her own to enable her to pay the arrears and preserve her long-term tenancy. The court passed the matter to September 21, 1995 for appearance of Betty Marshal, Esq. — the guardian ad litem proposed by counsel for DSS/PSA.
Having observed and spoken to June Raff on a number of occasions and having ascertained that Ms. Marshal is capable and has consented to serve as guardian ad litem for June Raff, the court agrees with the position of counsel for DSS/PSA. Therefore, pursuant to CPLR 1201 and 1202, it is ordered, that Betty Marshal, Esq., who is a competent and responsible person, aware of the nature of the within proceeding, be and is hereby appointed guardian ad litem of June Raff, to serve without bond, and to appear for and protect her rights and interests in this action.
The court notes petitioner’s opposition to said appointment. In short, this court has considerable experience in this area and sharply disagrees with petitioner’s reliance upon 1199 Hous. Corp. v Jackson (NYLJ, Mar. 20, 1991, at 22, col 6), Zuckerman v Burgess (NYLJ, Mar. 13, 1991, at 22, col 3), and Silgo 22nd St. Assoc. v Hennies (NYLJ, Apr. 24, 1991, at 22, col 6), for the proposition that this court lacks jurisdiction to appoint a guardian ad litem because it has no jurisdiction to make capacity/competency decisions.* As petitioner sets forth the premise of these cases (all three rendered by Judge Solomon [Civ Ct, NY County]), Housing Court cannot appoint a guardian ad litem unless and until the Supreme Court has first declared the Housing Court litigant incompetent or incapacitated pursuant to what used to be known as committee or conservatorship proceedings and is now known as a proceeding to appoint a guardian of the person and/or property pursuant to article 81 of the Mental Hygiene Law. The premise itself is faulty.
The provisions of CPLR 1201, 1202 and 1203 are separate and distinct from the provisions of the Mental Hygiene Law. *354 The CPLR mandates that certain individuals shall not appear on their own before the court. If the categories of persons listed in the CPLR were limited to only those for whom the Supreme Court has appointed a committee or conservator under the old law, or a guardian of their person and/or property under the new law, then the premise would be correct since it is true that Civil and Housing Court do not have jurisdiction to determine issues of competence and capacity.
However, the CPLR categories are not so limited. In essence, CPLR 1201 provides three categories of persons who shall appear by a guardian ad litem: (1) certain infants, (2) certain adjudicated incompetents or consérvateos (now, certain persons who have had guardians of their person and/or property appointed), (3) or an individual who "is an adult incapable of adequately prosecuting or defending his [her] rights. ” (Emphasis added.) It is this third category which is operative herein and in the dozens of reported cases in which guardians ad litem have been appointed in summary eviction proceedings. It is this category which does not require Supreme Court adjudication of competency/capacity and which properly gives Civil and Housing Court Judges discretion to appoint guardians ad litem, solely in the specific proceeding before the court, to appear for litigants who seem to the court to be unable to understand the nature of the proceedings and adequately protect and assert their rights and interests in their tenancy.
To phrase it another way, the reason why a Housing Court Judge can appoint a guardian ad litem under this third category is because it does not set a standard of incompetency, which must be decided by the Supreme Court, but rather sets forth a lesser standard of an individual who does not appear able to adequately defend or prosecute his/her rights in the individual proceeding before the Housing Court. Moreover, while Judge Solomon declined to appoint a guardian ad litem in 1199 Hous. Corp. v Jackson (supra), she nonetheless specifically held: "The Commissioner [of DSS] is correct that Article 12 of the CPLR permits the appointment of a guardian ad litem to appear for 'an adult incapable of adequately prosecuting or defending his rights’ * * * and that this court has the power to make such an appointment. ” (Emphasis added.)
A careful reading of 1199 Hous. Corp. v Jackson (supra) will reveal that the DSS/PSA psychiatric evaluations of the tenant therein indicated that the tenant was psychotic and included a referral to the DSS Office of Legal Affairs for the initiation of a conservator/committee proceeding in Supreme Court concern *355 ing the tenant’s competence. It appears to this court that Judge Solomon was not questioning the court’s power to appoint a guardian ad litem for a litigant who is unable to prosecute or defend his/her rights (as the above quote clearly indicates) but felt that because DSS had presented evidence that the tenant’s situation in Jackson was one of alleged incompetence for which a Supreme Court proceeding was recommended to DSS, then the appropriate manner of proceeding would be for DSS to get on with a committee proceeding and seek a Supreme Court stay of the eviction proceeding, rather than seeking appointment of a guardian ad litem and vacatur of the default judgment from the Civil Court which did not have jurisdiction to determine the tenant’s mental competence. In fact, in her conclusion in Jackson, Judge Solomon indicates that DSS had recently commenced a Supreme Court incompetency proceeding in which the eviction action was stayed, and therefore her denial of appointment of a guardian ad litem did not "expose Jackson to risk.” (1199 Hous. Corp. v Jackson, supra.) Finally, Judge Solomon held that the portion of the motion seeking vacatur of the default judgment was denied, ”without prejudice to renewal by a proper party if such relief should become appropriate by virtue of the proceedings in the Supreme Court. ” (Supra.)
It should also be noted that the petitioner in Jackson (supra) did not object to the appointment of a guardian ad litem "as its only interest is in collecting the rent due from Jackson.” (1199 Hous. Corp. v Jackson, supra.) In fact, in 466 Assocs. v Murray (151 Misc 2d 472 [a decision in which this court strongly agrees with Judge Heymann’s counteranalysis of Judge Solomon’s three decisions cited above]), the motion to appoint a guardian ad litem was brought by the petitioner itself. In 466 Assocs. the court concluded that it had the "inherent power” and the jurisdiction under CPLR 1201 and 1202 "to appoint a guardian ad litem for the limited purpose of appearing for a party during the particular litigation at hand. (See, Seigel, NY Prac § 196 [2d ed].)” (Supra, at 475.)
Further, unlike the situation in many of the reported decisions involving appointment of a guardian ad litem in eviction proceedings, June Raff has appeared in court on a number of occasions. Both myself and my court attorneys have had opportunities to observe her demeanor and to speak with her. In addition, her husband recently passed away. Thus, the court’s bases for appointing a guardian ad litem for Mrs. Raff are not limited to the moving papers of the Commissioner of DSS or *356 the psychiatric evaluations (in which the doctor stated prior to Mr. Raff’s death — and which the court feels would be even more apropos after his death — that "an attempt should be made to obtain whatever supports are available to help stabilize the client and her husband in their apartment”). In fact, pursuant to CPLR 1202 (a), this court could have and would have appointed a guardian ad litem for Mrs. Raff "on its own initiative” had the Commissioner of DSS not moved for same.
On another issue, petitioner correctly argues against this court’s vacatur of the stipulations of settlement entered into between Mrs. Raff and petitioner. However, Mrs. Raff’s pro se motion does not seek vacatur, but rather an extension of time to pay arrears pursuant to the stipulations. To the extent that the motion of the Commissioner of DSS to appoint a guardian ad litem is also read to request vacatur of said stipulations, or of the judgment or warrant herein, it is denied. Although the court has appointed a guardian ad litem for Mrs. Raff it has not found (even if it could), and does not believe, that she is incompetent or even incapable of understanding the nature and consequences of the stipulations which she signed and the court carefully allocuted.
The court is also cognizant that this matter has been pending for some time and that respondent cannot live rent free. However, the court feels that the circumstances after Mr. Raff’s passing are such that with the assistance of Ms. Marshal, as guardian ad litem, Mrs. Raff may very well be enabled to become focused and understand the gravity of her situation and take the necessary steps to avoid the consequences of her eviction, while in a short time paying petitioner all rent due to date. Therefore, it is further ordered, that execution of the warrant herein is stayed and June Raff is afforded an extension of time until October 31, 1995 to work with her guardian ad litem in order to secure and pay the arrears of $5,938.71 due through September 30, 1995. Mrs. Raff is also to pay October rent by October 31, 1995. It is further ordered, that the appointment of Betty Marshal, Esq. as guardian ad litem for June Raff pertains only to assistance in resolving this nonpayment proceeding and maintaining Mrs. Raff in the subject premises, if possible, and is made for the purposes including, but not limited to, the guardian ad litem acting to the best of her ability to assist Mrs. Raff in obtaining the arrears due by October 31, 1995, either by securing the life insurance proceeds to which she may be entitled or by obtaining *357 emergency assistance funds from DSS to cover the arrears while she is awaiting the insurance proceeds (which might be accepted by DSS as collateral for repayment of any emergency assistance loan) or by any other available means; and to assist Mrs. Raff in obtaining any ongoing entitlements or benefits for which she may be eligible, and/or employment or other income and resources, so as to enable her to pay the rent herein in the future. It is further ordered, that should the guardian ad litem realize within a reasonable period of time that respondent will be unable to pay the arrears herein by October 31, 1995, then sufficiently before that date, she shall move to restore this matter to the calendar of this Part and set forth as part of said motion the efforts that have been made and expected timetables for securing the funds, if any exist. And, it is further ordered, that the Human Resources Administration/PSA provide the fee for the services of the guardian ad litem appointed herein and that said fee be the maximum fee available in like circumstances involving considerable time and effort to be expended by a guardian ad litem (at least $250).

 See, Finkelstein, Issues, Considerations and Suggested Responses in Housing Matters Involving At-Risk Litigants, unpublished manuscript, July 1989, as cited in 1199 Hous. Corp. v Jackson, supra.