Syed **ABDULLAH**, et al.,
Plaintiffs–Appellees,

v.

**IMMIGRATION AND NATURAL-IZATION SERVICE,** Defendant–Appellant.

No. 2109, Docket 96—6206.

United States Court of Appeals,
Second Circuit.

Argued Sept. 3, 1997.

Decided July 8, 1999.

Robert A. Murtha, Jr., New York, N.Y. (Helene Chowes and Steven C. Neil, New York, N.Y., Of Counsel), for Plaintiffs–Appellees.

Diogenes P. Kekatos, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, New York, N.Y., James A. O'Brien III, Special Assistant United States Attorney and Gideon A. Schor, Assistant United States Attorney, Of Counsel), for Defendant–Appellant.

Before: MINER and LEVAL, Circuit Judges, and GRIESA, District Judge.*

LEVAL, Circuit Judge:

Plaintiffs, who are undocumented aliens, brought this suit against the Immigration and Naturalization Service (the "INS"), alleging that it employed unconstitutional policies and practices in denying their petitions for Special Agricultural Worker ("SAW") status under 8 U.S.C. § 1160. The district court (Schwartz, J.) granted summary judgment in favor of plaintiffs on three of their claims and ordered the INS to readjudicate. See Abdullah v. INS, 921 F.Supp. 1080 (S.D.N.Y.1996).

The INS contends that the district court lacked jurisdiction because 8 U.S.C § 1160(e)(1) limits federal courts' authority to review "a determination respecting an application for adjustment of status." We disagree, finding that each of the claims falls within a recognized exception to the jurisdictional bar. As to the merits, we

* The Honorable Thomas P. Griesa, United States Chief District Judge of the Southern District of New York, sitting by designation.

reverse the court's holding that the Due Process Clause requires the INS to provide plaintiffs with interpreters; on plaintiffs' other claims, we vacate the grant of summary judgment and remand.

## BACKGROUND

### A. *Statutory and Regulatory Scheme*

In 1986, Congress enacted the Immigration Reform and Control Act ("IRCA"), which established an amnesty program for agricultural workers. Under the program, an illegal alien who applied for SAW status during an eighteen-month period commencing on June 1, 1987, could have status adjusted to that of an alien lawfully admitted for temporary residence if otherwise admissible to the United States as an immigrant and able to establish residence in the United States during the twelve-month period ending on May 1, 1986, and performance of seasonal agricultural services for at least 90 man-days during that period. *See* 8 U.S.C. § 1160(a)(1).

Under 8 U.S.C. § 1160, applicants for SAW status have the burden to prove "as a matter of just and reasonable inference" that they worked the requisite number of days as agricultural workers. *See* 8 U.S.C. §§ 1160(a)(1), (b)(3)(B)(iii). To meet this burden, applicants are required to present evidence independent of their testimony, *see* 8 C.F.R. § 210.3(b)(2), such as employer records, pay stubs, or sworn affidavits from "agricultural producers, foremen, farm labor contractors, union officials, fellow employees, or other persons with specific knowledge of the applicant's employment." 8 C.F.R. § 210.3(c)(3). Federal regulations provide that the inference to be drawn from this documentation "depend[s] on the extent of the documentation, its credibility and amenability to verification." 8 C.F.R. § 210.3(b)(1).

Any alien who submits a nonfrivolous application for SAW status during the eighteen-month application period is granted a work permit authorizing him or her to engage legally in paid employment, and cannot be excluded or deported while his or her application is being processed. 8 U.S.C. § 1160(d)(2). If the application for SAW status is granted, an alien becomes a lawful temporary resident and can, in due course, obtain permanent residence status. *See* 8 U.S.C. § 1160(a)(1)-(2).

INS regulations provide for a personal interview of each applicant by an INS legalization officer ("LO"). 8 C.F.R. § 210.2(c)(2)(iv). If the LO suspects that the application was fraudulent, the officer rates the level of suspicion of fraud on a scale of one to five. Following the personal interview, the LO recommends approval or denial of the application to the INS Regional Processing Facility ("RPF"). If the LO recommends denial and the RPF concurs, the RPF sends applicants a notice of intent to deny setting out the grounds for denial and inviting the applicant to submit further evidence. 8 C.F.R. § 103.2(b)(16)(i). The RPF considers any additional evidence submitted and makes a final decision on the application.

An RPF denial of an application for SAW status can be appealed to the INS legalization appeals union ("LAU"). 8 C.F.R. § 103.3(a)(3)(i). Pursuant to 8 U.S.C. § 1160(e)(2)(B), an applicant is permitted to submit "such additional or newly discovered evidence as may not have been available at the time of the determination" by the RPF. The LAU is the highest level of administrative appellate authority.

Under 8 U.S.C. § 1160(e)(1), judicial review of "a determination respecting an application for adjustment of [SAW] status" is generally prohibited; however, 8 U.S.C. § 1160(e)(3)(a) permits review of a denial of SAW status in connection with "judicial review of an order of exclusion or deportation." Section 1160(e)(3)(B) provides that review of an order or exclusion or deportation "shall be based solely upon the administrative record established at the time of the review by the [INS] appellate authority." At the time, district courts lacked jurisdiction to review an order of deportation. *See* 8 U.S.C. § 1105a (repealed 1996,

as to orders filed on or after September 30, 1996). Thus, the statute precluded judicial review of an individual denial of adjustment to SAW status except in the context of review by the Courts of Appeals of an order of deportation or exclusion. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 486, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991).

### B. *Procedural History*

Plaintiffs are 437 undocumented aliens, primarily from the Indian subcontinent, who applied for and were denied adjustment to SAW status. Blue 2. After unsuccessfully appealing the adverse decisions to the LAU, plaintiffs filed this suit in the Southern District of New York, contending that INS policies and practices employed in the course of processing and denying their applications violated federal law and the United States Constitution.

The INS moved to dismiss the action for lack of subject matter jurisdiction pursuant to 8 U.S.C. § 1160(e)(1). The district court rejected this argument, holding that plaintiffs' claims did not challenge such review of a determination on an application for adjustment of status, but instead questioned the legality of the INS procedures.

The district court went on to grant summary judgment in favor of plaintiffs on three of their constitutional claims. First, the district court held that the INS had violated the Due Process Clause by applying a "virtually irrebuttable" presumption of fraud to applicants whose proof of employment came from employers on an INS blacklist for suspicion of producing fraudulent documents. Second, the district court held that the INS acted illegally when LO examiners recommended the denial of many SAW applications based wholly or partially on a fraud profile that included ethnic or national origin as a factor. Finally, the district court held that the plaintiffs' due process rights were violated by the INS's failure to provide interpreters for applicants during the LO interviews.

In granting summary judgment, the district court vacated the INS's denials of plaintiffs' SAW status, and ordered the INS to readjudicate each plaintiff's application according to constitutionally permissible procedures. The INS now appeals.

### *DISCUSSION*

The INS argues that the district court lacked subject matter jurisdiction over plaintiffs' claims pursuant to 8 U.S.C. § 1160(e). Alternatively, the INS argues that 1) summary judgment was improperly granted because there remain material factual disputes with respect to plaintiffs' constitutional claims, or that 2) the INS, rather than plaintiffs, was entitled to summary judgment on these claims. We find that the district court did have subject matter jurisdiction, but that summary judgment was improperly granted.

### A. *Subject Matter Jurisdiction*

■ The INS contends that the district court lacked subject matter jurisdiction over each of plaintiffs' three constitutional claims under § 1160(e) of IRCA, which precludes district court review of "a determination respecting an application for adjustment of [SAW] status." Notwithstanding the statute's broad preclusion of judicial review of INS determinations of status, the Supreme Court's rulings have established that claims of this nature made under such circumstances are within the district court's jurisdiction.

■ In *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), the Supreme Court held that § 1160(e)(1)'s reference to "a determination" covered only an individual denial of SAW status, and did not deprive district courts of jurisdiction to hear "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." 498 U.S. at 492, 111 S.Ct. 888. The *McNary* plaintiffs, 17 aliens denied SAW status, asserted the unconstitutionality of several INS policies—the agency's failure to give SAW

applicants notice of or an opportunity to challenge adverse evidence, its refusal to allow applicants to call witnesses on their behalf, its failure to provide competent interpreters for interviews with LO examiners, and its refusal to make a verbatim recording of those interviews. *See id.* at 487–98, 111 S.Ct. 888.

The *McNary* Court distinguished claims "alleging a pattern or practice" of unconstitutional conduct from challenges to individual status determinations, which are denied review by § 1160(e)(1). *See* 498 U.S. at 483, 111 S.Ct. 888. The *McNary* plaintiffs were not seeking adjudication of entitlement to SAW status (a review of the "determination" of that status), but an opportunity for fair consideration of their applications by the agency. *Id.* at 495, 111 S.Ct. 888. In addition, the Court reasoned, plaintiffs "would not as a practical matter be able to obtain meaningful judicial review" of those claims upon the review by the Courts of Appeals of an individual applicant's deportation or exclusion order under § 1160(e)(3) because such review would be limited to the administrative record, and the procedures employed by the INS in reviewing the SAW application "d[id] not allow applicants to assemble adequate [administrative] records." *Id.* at 496, 111 S.Ct. 888. The Court further reasoned that review of INS procedures by Courts of Appeals in the context of an individual deportation order would likely be inadequate because those courts "lack the factfinding and record-developing capabilities of a federal district court." *Id.* at 497, 111 S.Ct. 888.

We find that plaintiffs' claims are within the range of "challenges to procedures used by [the] INS" that *McNary* found subject to review by the district courts. 498 U.S. at 494, 111 S.Ct. 888. Each of the three claims asserts that the INS utilized an unconstitutional practice in the resolution of SAW applications. Furthermore, as to each, the INS's failure to make an adequate administrative record of the SAW decision would effectively prevent a court of appeals, while reviewing an individual order of deportation or exclusion, from assessing the validity of the claim with respect to denial of SAW status. Finally, to the extent that a plaintiff's success would depend on proving that an unconstitutional presumption or procedure was, in fact, being employed in the guise of individualized review of his application, that could not likely be established in the court of appeals on review of a simple deportation order upon a record limited to that individual's file; it would require factfinding capabilities not possessed by the court of appeals.

For all those reasons we find that these three claims—failure to provide interpreters, employment of an "irrebuttable presumption" of fraud in cases where the applicant's qualifying agricultural employment was alleged to be with an employer suspected of fraudulent certification, and an unconstitutional presumption of fraud based on national origin—are subject to judicial review in the district courts under the rule of *McNary*. The district court has jurisdiction, not to determine the plaintiffs' eligibility for SAW status, but solely to determine their entitlement to lawful procedures.

We reject the INS's argument that *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) ("*CSS* "), mandates a different result. In *CSS,* the court held that challenges to certain INS regulations on status adjustment were not ripe for review until a plaintiff's application had been denied pursuant to those regulations. *See id.* at 59, 113 S.Ct. 2485. In dicta, the *CSS* Court suggested that even when a plaintiff's claim became ripe, a district court might not have jurisdiction to hear it, since unlike the "procedural objections" raised in *McNary* that could not be meaningfully considered absent development of a factual record, a challenge to the regulations relied on by the INS would be capable of review by a court hearing an appeal from a deportation order. *Id.* at 60–61, 113 S.Ct.

2485. The INS argues that this passage from *CSS* establishes that district courts lack jurisdiction to hear "substantive," as opposed to "procedural," challenges to INS' review of SAW applications, and that plaintiffs' claims fall within that "substantive" category.

We disagree with the INS's understanding of the Supreme Court's opinion. *CSS* expressly reaffirmed *McNary's* holding that a district court may exercise jurisdiction to adjudicate pattern-or-practice claims against the INS, as opposed to individual denials of status adjustment. *See* 509 U.S. at 55–56, 113 S.Ct. 2485. The Court made no distinction between the "substantive" or "procedural" nature of the claim raised, and further stated that a district court *would* have subject matter jurisdiction over the regulatory challenge brought by the *CSS* plaintiffs as a class (assuming that other requirements, such as ripeness, were met). *See id.* A challenge to the lawfulness of regulations is quite different from these claims; the existence and meaning of the regulations are apparent to the court of appeals without need for factfinding. Moreover, the passage on which the INS relies turns on an important rationale of *McNary:* that an adequate administrative record is a prerequisite to the preclusion of district court review. *See* 509 U.S. at 60–61, 113 S.Ct. 2485. The absence of that record here, as in *McNary,* makes § 1160(e)(1)'s jurisdictional bar inapplicable. We conclude that the district court properly exercised subject matter jurisdiction over plaintiffs' three claims.

## B. *Merits of the Claims*

■ 1. *Interpreters.* The INS contends that the district court erred in holding that the Fifth Amendment's Due Process Clause mandates that the government provide competent interpreters in the native languages of the SAW applicants, during interviews with the INS Legalization Officers. We agree and reverse.

For purposes of this inquiry, we assume without deciding that the plaintiffs are entitled to the protections of the Due Process Clause in the adjudication of their SAW applications—a point that the INS contests. *See Haitian Refugee Ctr., Inc. v. Nelson,* 872 F.2d 1555, 1562 (11th Cir. 1989), *aff'd on other grounds, McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). We note, however, that petitioners face the government in a posture more similar to that of immigrants *requesting* admission at the border than that of aliens *defending* the legality of their presence in the country at a deportation hearing. *See Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (recognizing distinction between entitlements of aliens applying for admission at border and resident aliens defending against deportation).

■ In evaluating due process claims, we look at the factors set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The factors are 1) the interests of the claimant, 2) the risk of erroneous deprivation absent the benefit of the procedures sought and the probable value of such additional safeguards, and 3) the government's interest in avoiding the burdens entailed in providing the additional procedures claimed. *See id.* at 334–35, 96 S.Ct. 893; *see also Landon,* 459 U.S. at 34–35, 103 S.Ct. 321 (applying *Mathews* factors to analyze constitutional sufficiency of procedures at alien exclusion hearing).

We respectfully disagree with the district court's appraisal of those factors in the context of the plaintiffs' claim of entitlement to have interpreters provided by the INS at LO interviews.

■ It is true that in defending against criminal prosecution, accused defendants have a constitutional right to be provided with the services of an interpreter. *See United States ex. rel. Negron v. New York,* 434 F.2d 386, 390–91 (2d Cir.1970). We have also held that aliens claiming a risk of political persecution abroad have a right to

competent translations of deportation and exclusion proceedings. *See Augustin v. Sava*, 735 F.2d 32, 38 (2d Cir.1984); *see also Gonzales v. Zurbrick*, 45 F.2d 934, 937 (6th Cir.1930); *In re Tomas*, 19 I. & N. Dec. 464, 465, 1987 WL 108944 (BIA 1987). Other circuits have recognized similar protections in the context of other deportation and exclusion proceedings. *See Tejeda–Mata v. INS*, 626 F.2d 721, 726 (9th Cir. 1980); *Niarchos v. INS*, 393 F.2d 509, 511 (7th Cir.1968). But we believe there is an important distinction between those proceedings and one in question here.

We have no doubt that plaintiffs have a significant interest in achieving the benefits of SAW status. Nonetheless it is qualitatively different from the interest of one defending against criminal prosecution, deportation or exclusion. In the SAW context, the government has not sought out individuals with the purpose of depriving them of their liberty or expelling them from the country; rather, aliens have affirmatively petitioned the government for a status enhancement, whose validity it is their burden to establish. In such a situations, it is reasonable to require petitioners to make suitable arrangements for the provision of the proof necessary to meet their burdens. The distinction between government-initiated proceedings seeking to affect adversely a person's status and hearings arising from the person's affirmative application for a benefit seems particularly meaningful in the context of the IRCA, a statute whose Congressional cosponsor characterized as one of "extraordinary ... grace and generosity," and whose beneficiaries, when applying for amnesty, have been found not to be entitled to the same privileges and status as lawful permanent residents. 129 Cong. Rec. 12814 (1983) (remarks of Sen. Simpson); *Matter of Chavez–Calderon*, 20 I. & N. Dec. 744, 748, 1993 WL 495141 (BIA 1993); *see also Lyng v. Payne*, 476 U.S. 926, 942, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986) (contrasting, for due process purposes, "legitimate claim[s] of entitlement" by persons already receiving government benefits with claims made by new applicants).

We believe that the "claimant's interest" factor specified in *Mathews* entails examination of a subfactor: the nature and objective of the proceeding in which the claim of right is asserted. When government seeks to inflict punishment on an individual, or to deprive him of liberty or property or to inflict some significant mandatory change on the conditions of the individual's life, that individual's interest in being furnished with an interpreter at government expense is far greater than when the individual affirmatively initiates a proceeding seeking the benefits of a "generous" statutory exception. We believe this *Mathews* factor favors the INS rather than the plaintiffs in the context of this controversy.

We also disagree with the district court's assessment of the third *Mathews* factor—the government's interest in avoiding the burdens that would be imposed on it if the claim of entitlement were validated. In our view, the government has a substantial interest in avoiding that burden, which the district court failed to recognize.

The district court, following reasoning of the Eleventh Circuit in *Haitian Refugee Ctr. Inc. v. Nelson*, 872 F.2d at 1562, concluded that the government has no interest in avoiding the burden of providing interpreters. In *Nelson*, the Eleventh Circuit took note of an INS handbook that instructs examining officers to make interpreters available. The court reasoned that, because INS procedures contemplate the provision of an interpreter, the agency has no interest in avoiding the burden, and concluded, "it is unnecessary for us to consider the third *Mathews* factor." *Id.* The district court followed *Nelson* in discounting any government interest to counterbalance the plaintiffs' interest in successfully establishing their claims. *See* 921 F.Supp. at 1097–98.

We disagree. In deciding, over government opposition, whether the due process clause requires the government to assume this burden, the government's prior voluntary assumption of the burden does not render the burden nonexistent. Rule or no rule, the burden remains. The INS estimates that it received over 1.3 million applications for SAW status. The regulations require a personal interview for each applicant. *See* 8 CFR § 210.2(c)(2)(iv). As all the applicants are (or claim to be) undocumented alien agricultural workers, it may safely be assumed that a high percentage are not fluent in English. The applicants in this case alone would require the provision of interpreters in Urdu, Hindi and Bengali. Upholding the right plaintiffs claim would no doubt require provision of interpreters in thousands of cases and in a huge range of languages. The expense and difficulty of meeting that need would be great.

We conclude in considering the third *Mathews* factor that the burden on the government to provide interpreters for LO interviews would be considerable.

■ We recognize that plaintiffs have a significant interest in obtaining an accurate determination of their eligibility for SAW status. The district court may also have been right to find that interpreters would increase the accuracy of the INS's assessments, and that applicants who, because of a limited ability to speak English, cannot convincingly respond to examiners' questions will be disadvantaged. The government may thus decide that its own interests, as well as the applicants', are best · served by providing interpreters. But we disagree with the district court's view that where, as here, aliens are petitioning for a special, statutorily-created benefit, the Constitution requires the government to provide interpreters. As the Supreme Court emphasized in assessing the adequacy of procedures at exclusion hearings, our task is limited to "determin[ing] what procedures would satisfy the minimum requirements of due process,"

not to imposing procedural mandates "simply ... because the [ ] court may find them preferable." *Plasencia*, 459 U.S. at 35, 103 S.Ct. 321.

We therefore reverse the court's ruling and remand with directions to enter summary judgment for the INS on this claim.

■ 2. *Improper Reliance on Plaintiffs' Ethnicity or National Origin.* The INS next challenges the district court's grant of summary judgment on plaintiffs' claim that it engaged in unconstitutional discrimination on the basis of ethnicity and national origin in reviewing their SAW applications. We agree with the INS that summary judgment was improperly granted. The factual record was insufficiently developed as to the nature and extent of the INS' reliance on plaintiffs' ethnicity and national origin. We therefore remand for further proceedings.

Based on its review of the LO examiners' notes taken during their interviews with plaintiffs and their evaluations of plaintiffs' supporting documentation, the district court determined that the INS had employed an impermissible discriminatory nationality-based profile to find fraud and deny applications. The finding was based primarily on seven application files, called to the court's attention by plaintiffs, in which the examiner's notes make reference to a fraud profile that includes the fact that the applicant was of Indian or Pakistani nationality, or was from the Punjab or other region. The court noted that it found such references in many more than the seven files. *See* 921 F.Supp. at 1094–95.

■ We agree with the district court that the Constitution does "not permit an immigration official, in the absence of [lawful quota] policies, to ... discriminate on the basis of race and national origin." *Bertrand v. Sava*, 684 F.2d 204, 212 n. 12 (2d Cir.1982); *see also Wong Wing Hang v. INS*, 360 F.2d 715, 719 (2d Cir.1966) (Friendly, J.) (denial of suspension of deportation to eligible alien would be abuse

of discretion if it "rested on an impermissible basis such as an invidious discrimination against a particular race or group").

Nonetheless, we think that evidence before the district court was insufficient to support the grant of summary judgment that the INS had engaged in unconstitutional discrimination. If, for example, the INS found a pattern of fraudulent applications including similar devices, such as repeated use of identical form documents previously found to be fraudulent, or repeated use in answer to stock questions of identical answers previously found to be fraudulent, occurring with regularity among applicants of a particular nationality, region or city, the observed pattern might result not from any greater inclination of persons of one nationality than another to commit fraud, but from the tendency of persons who have recently emigrated to this country to maintain a community with persons from the same place of origin. Thus, while the INS would be constitutionally forbidden to assume that persons of one nationality are more inclined than others to fraud, it would not be barred from observing repeated indicia of similar fraud from persons of one community, and consequently from looking more carefully at applications from others of the same community bearing similar indicia of fraud. *See Bertrand,* 684 F.2d at 214–15 & n. 14; *United States v. Jackson,* 652 F.2d 244, 248–49 (2d Cir. 1981) (where witness told police crime was committed by person of certain race, race of suspect was one relevant factor in determining whether police had reasonable suspicion to stop and question suspect).

The INS asserts that when an application was denied with reference to the applicant's ethnicity or national origin, "the LOs recommended denial not because of nationlity or ethnicity but because of the application's suspicious resemblance to demonstrably fraudulent applications submitted by fellow nationals." To meaningfully evaluate that claim, however, more evidence is needed than was available to the district court at summary judgment.

We conclude that the evidence was insufficient to permit a determination by summary judgment whether there were in fact repetitive indicia of a pattern of fraud among an identifiable group of applicants; if so, whether the INS drew permissible inferences from the pattern in processing individual applications; or whether it was engaging in constitutionally prohibited bias. We therefore vacate the grant of summary judgment and remand for trial.

3. *"Irrebuttable Presumption" of Fraud Based on Claimed Employer.* The INS also appeals from the grant of summary judgment in plaintiffs' favor based on the district court's conclusion that the INS utilized an irrebuttable presumption of fraud. Plaintiffs contended that, with respect to certain employers who had been convicted of submitting fraudulent certifications of agricultural employment in support of SAW applications, the INS presumed conclusively that all applications claiming agricultural employment by those employers were fraudulent. Plaintiffs claimed that the use of such a conclusive presumption violates due process.

We find no adequate basis in the record for the grant of summary judgment. Indeed, the district court's own observations seem to undercut the grant of summary judgment to many of the plaintiffs.

In our view, the records examined by the district court were inadequate to justify the conclusion on summary judgment that the INS employed an irrebuttable presumption, as opposed to a reasonable inference, of fraud in the case of employers convicted of precisely the type of fraud in question. Furthermore, the court found only that *"at least in some cases,* defendant erected a presumption of fraud which was virtually irrebuttable." Even if the conclusion was warranted that the INS had impermissibly done so in some cases, that would not warrant vacating the INS's

determinations on the cases of all plaintiffs claiming employment by those employers.

As the court did not conclude that the agency had employed an illegal irrebuttable presumption in the case of all (or even a large number) of plaintiffs claiming employment with the suspect employers, the findings do not support the judgment requiring the INS to readjudicate the applications of all the plaintiffs.

## CONCLUSION

We vacate the grant of summary judgment in favor of the plaintiffs. As to the plaintiffs' claim based on failure to provide interpreters at the hearings or SAW applications, we reverse and direct entry of summary judgment in favor of the INS. As to plaintiffs' claims of use of nationality based profiles in violation of equal protection and of irrebuttable presumptions in violation of the Due Process Clause, we vacate the judgment and remand for trial.