OPINION OF THE COURT
Lucy Billings, J.
This case requires the court to examine the range of issues that arise in determining whether to appoint a guardian ad litem for a party. The court holds, first, that the Social Services Law does not confer the right to intervene upon a protective services agency seeking a guardian ad litem for a party. Without intervening, the agency, as a friend of a party, still may move for the guardian ad litem. The standard of proof to establish the grounds for a guardian ad litem is a preponder *729 anee of the evidence. Finally, where one party, such as petitioner here, is aware that another party may require a guardian ad litem, petitioner must bring that question to the court’s attention. Any default judgment entered before the court determines that question is invalid.
In this landlord-tenant nonpayment proceeding, the Commissioner of the New York City Department of Social Services (DSS) has moved for (1) leave to intervene, (2) appointment of a guardian ad litem for respondent tenant V.K., and (3) vacatur of a default judgment. As outlined above and discussed further below, the court denies DSS’ motion to intervene, grants the motion to appoint a guardian ad litem, and vacates the default judgment.
“A person shall appear by his guardian ad litem * * * if he is an adult incapable of adequately prosecuting or defending his rights.” (CPLR 1201.)
“The court * * * may appoint a guardian ad litem at any stage in the action upon its own initiative or upon the motion ^ ^ ^
“2. a relative, friend or a guardian, committee of the property, or conservator; or
“3. any other party to the action.” (CPLR 1202 [a].)
A guardian ad litem’s purpose relates solely to the proceeding before the court, where he is to appear for and adequately assert and protect the rights of a party unable to do so herself. (E.g., W. v M., NYLJ, July 28, 1997, at 28, col 5 [Sup Ct, NY County]; Kings 28 Assocs. v Raff, 167 Misc 2d 351, 355-356 [Civ Ct, Kings County 1995].)
I. INTERVENTION
If DSS were made a party to this proceeding, then based on that status DSS could move for appointment of a guardian ad litem for respondent. (CPLR 1202 [a] [3].) The court must permit a person to intervene as a party when a State statute confers the absolute right to intervene. (CPLR 1012 [a] [1].) The court may permit intervention either when a State statute confers the right in the court’s discretion or when “the person’s claim or defense and the main action have a common question of law or fact.” (CPLR 1013.) In a special proceeding, such as this one, intervention is allowed only by leave of the court. (CPLR 401.)
Without reference to CPLR 1012 or 1013, DSS relies exclusively on Social Services Law § 473. That statute gives *730 DSS the authority to provide “protective services” specifically including: “arranging * * * for commitment, guardianship, or other protective placement * * * either directly or through referral to another appropriate agency” (Social Services Law § 473 [1] [c]), and other services set forth in the regulations. (Social Services Law § 473 [1] [f].) These services include: “enlisting the services of other agencies and professionals” (18 NYCRR 457.6 [b]), and “providing advocacy and assistance in arranging for legal services to assure receipt of rights and entitlements due to adults at risk.” (18 NYCRR 457.1 [d] [8].) In addition, 18 NYCRR 457.6 (a) specifically requires DSS “to pursue appropriate legal intervention” under specific articles of the Mental Hygiene Law, Family Court Act, and Surrogate’s Court Procedure Act that authorize hospitalization of mentally ill persons, education of mentally retarded persons, guardian-ships of a person or property, and orders of protection.
While seeking a guardian ad litem is consistent with the specified services that Social Services Law § 473 and the regulations under it authorize DSS to provide, nowhere do those laws confer upon DSS the right to intervene, as contemplated by CPLR 1012 (a) (1), to seek a guardian ad litem as provided in CPLR article 12. In contrast to Social Services Law § 473, statutes that do confer a right to intervene explicitly state that right and the specific type of case and purpose in the case for which that right is conferred. (Domestic Relations Law § 172 [1]; Family Ct Act § 1035 [d]; Lien Law § 72 [3] [b].)
The fact that the detailed regulations under Social Services Law § 473 omit reference to CPLR article 12 and guardians ad litem, while specifically listing other legal interventions similar to but distinct from guardians ad litem, compels the conclusion that Social Services Law § 473 does not confer such a right. DSS’ failure to show any need for intervention in this proceeding, in order to carry out DSS’ duties to provide protective services, further supports this reading of Social Services Law § 473 and application of CPLR 1012 and 1013 to deny intervention. The agency will not be bound by any judgment in the proceeding; thus the agency has no interest at stake that requires protection through intervention. (CPLR 1012 [a] [2]; Matter of Tyrone G. v Fifi N., 189 AD2d 8, 17 [1st Dept 1993]; Quality Aggregates v Century Concrete Corp., 213 AD2d 919, 920 [3d Dept 1995].) The agency may continue to carry out its duties without intervention in the proceeding.
Likewise, DSS does not show that it has any claim or defense that raises a question in common with any of the parties’ claims *731 or defenses in this proceeding. (CPLR 1013; Matter of Tyrone G. v Fifi N., 189 AD2d, supra, at 17; Quality Aggregates v Century Concrete Corp., 213 AD2d, supra, at 920-921; Matter of Pier v Board of Assessment Review, 209 AD2d 788, 789 [3d Dept 1994].) Therefore, and particularly in view of the summary nature of this proceeding, where unnecessary parties are discouraged, the court denies DSS’ motion to intervene. (CPLR 401.)
II. STANDING TO MOVE FOR APPOINTMENT OF A GUARDIAN AD LITEM
Without intervention, DSS’ administration of its duties under Social Services Law § 473 still gives DSS standing to seek appointment of a guardian ad litem. A “friend,” even if not a party, may move for appointment of a guardian ad litem in the proceeding. (CPLR 1202 [a] [2].) The terms in this paragraph make sense only if they refer to the person who stands in that relationship to the party for whom a guardian ad litem is sought. Thus a “friend” must refer to a friend of that party, here V.K., as opposed to a friend of the court, for example. (Soybel v Gruber, 132 Misc 2d 343, 347 [Civ Ct, NY County 1986]; Matter of Marilyn H., 100 Misc 2d 402, 404 [Fam Ct, NY County 1979].)
In this case, DSS sent its psychiatric consultant, Boris Magid, M.D., to visit V.K. at her home and evaluate her mental status. Dr. Magid determined that Ms. K.’s health is such that she cannot defend her rights as a tenant adequately. On that basis the agency urged the court to appoint a person who will defend Ms. K.’s rights and obtained a stay of her eviction pending that appointment. In addition, DSS was arranging for visiting nurse services, home attendant services, medical services, and fresh food for Ms. K.
An agency seeking to protect the interests of a party to a legal proceeding in furtherance of the agency’s charge to provide services to adults in need of those services qualifies as that party’s “friend” within the meaning of CPLR 1202 (a) (2). (Soybel v Gruber, 132 Misc 2d, supra, at 347; Matter of Marilyn H., 100 Misc 2d, supra, at 404.) DSS’ statutory functions, fleshed out in Social Services Law § 473 and 18 NYCRR part 457, plus the specific assistance DSS has provided to V.K. in this case, confer upon DSS the status of friend under CPLR 1202 (a) (2).
Regardless of DSS’ standing to move for the appointment, the court has the power to appoint a guardian ad litem “upon *732 its own initiative.” (CPLR 1202 [a]; see, W. v M., NYLJ, July 28, 1997, at 28, col 5, supra; Kings 28 Assocs. v Raff, 167 Misc 2d, supra, at 355-356.) The court now turns to the question of whether, based on the information DSS has provided, on notice to both parties and in open court, and to which neither party has objected, the court should appoint a guardian ad litem to assist respondent in defending her rights.
III. THE STANDARD OF REVIEW
The State’s public policy is to afford “rigorous protection of the rights of the mentally infirm.” (Vinokur v Balzaretti, 62 AD2d 990 [2d Dept 1978]; Kalimian v Driscoll, NYLJ, July 20, 1992, at 23, col 4 [App Term, 1st Dept].) This policy is not always easy to carry out. It is multifaceted and often requires balancing competing principles. On the one hand, the court has the duty to protect a party incapable of protecting her own interests, particularly when her home is in controversy. (Sengstack v Sengstack, 4 NY2d 502, 509 [1958]; Matter of Manufacturers Hanover Trust Co., 73 AD2d 539 [1st Dept 1979]; Palaganas v D.R.C. Indus., 64 AD2d 594 [1st Dept 1978]; Shad v Shad, 167 AD2d 532, 533 [2d Dept 1990].) On the other hand, this policy recognizes that the justification for legal intervention into the lives of persons suffering mental incapacities without those persons’ consent, though undertaken to protect their safety, health, and welfare, must outweigh the restrictions on liberty that the intervention entails. (Rivers v Katz, 67 NY2d 485, 496-498 [1986]; Matter of St. Luke’s-Roosevelt Hosp. Ctr., 159 Misc 2d 932, 936, n 5 [Sup Ct, NY County 1993], mod on other grounds 215 AD2d 337 [1st Dept 1995]; Matter of Fisher, 147 Misc 2d 329, 336-338, 338, n 17, 341 [Sup Ct, NY County 1989].)
Appointment of a guardian ad litem is a far less restrictive intervention than, for example, a commitment, guardianship, or conservatorship. (E.g., Tudorov v Collazo, 215 AD2d 750 [2d Dept 1995]; Matter of Bernice B., 176 Misc 2d 550, 553-555 [Sur Ct, NY County 1998]; W. v M., NYLJ, July 28, 1997, at 28, col 5, supra.) Nevertheless, guardians ad litem, though appointed to protect and assist a party, do substitute their judgment and decisions for the decision making that the party otherwise would exercise in a proceeding and curtail the party’s autonomy and freedom in that respect. (Rivers v Katz, 67 NY2d, supra, at 493-495; Matter of St. Luke’s-Roosevelt Hosp. Ctr., 159 Misc 2d, supra, at 937, 938, n 9; Matter of Fisher, 147 Misc 2d, supra, at 337, 338, n 17.) Guardians ad litem, to fulfill their *733 purpose, must ascertain and evaluate the party’s best interests and act to advance those interests. (W. v M., NYLJ, July 28, 1997, at 28, col 5, supra.) Although the party’s desires are relevant, they are not determinative. Thus a guardian ad litem may have to act contrary to the party’s desires and maintain a position adverse to the party. (Matter of Aho, 39 NY2d 241, 247 [1976].) Moreover, the guardian ad litem may be compensated from the property of the party represented. (CPLR 1204.)
Since V.K. has not consented to anyone stepping in to make decisions for her, whose services she may be obligated to pay for, that curtailment of her freedom must be sufficiently justified. Any “[l]oss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior.” (Addington v Texas, 441 US 418, 427 [1979].)
The elements of that proof are clear and relatively simple: that a person is incapable of adequately defending her rights. (CPLR 1201.) The standard of proof that the courts apply is more difficult to discern.
An articulated standard of proof allocates the risk of error between the parties and reflects both the degree of confidence the fact finder must have in the correctness of factual findings and the importance attached to the determination. (Addington v Texas, 441 US, supra, at 423.) A preponderance of the evidence usually applies in civil cases. (Supra.) In appointing a guardian ad litem, competing concerns tug this standard up and down.
On the one hand is the concern to err on the side of protecting a party who may be incapable of protecting herself, prompting appointment of a guardian ad litem as long as the court cannot conclude that the party’s condition did not impede her ability to protect her rights. (Grasso v Matarazzo, NYLJ, Apr. 8, 1998, at 32, col 3 [Civ Ct, Kings County]; Jennie Realty Corp. v Sandberg, NYLJ, July 21, 1993, at 23, col 5 [Civ Ct, Bronx County].) This standard, however, derives from a standard of review on appeal. (Kalimian v Driscoll, NYLJ, July 20, 1992, at 23, col 4, supra.) Similarly, the refusal to appoint a guardian ad litem may be reversed and remanded for a hearing if “substantial evidence” supported a party’s inability to protect her rights. (Palaganas v D.R.C. Indus., 64 AD2d 594, supra.) Appellate decisions suggest another ostensibly lenient standard when they apply a standard of review in upholding the refusal to appoint a guardian ad litem, pointing out the lack of a threshold showing, to raise a question warranting a *734 hearing: “evidence tending to show” a party’s inability to protect her rights. (Urban Pathways v Lublin, 227 AD2d 186 [1st Dept 1996]; Matter of Casey J., 251 AD2d 1002 [4th Dept 1998].)
The standards applicable on appeal or to warrant a hearing on whether a guardian ad litem should be appointed (Shad v Shad, 167 AD2d, supra, at 533, citing Palaganas v D.R.C. Indus., 64 AD2d 594, supra) do not define the standard for a trial court, when determining a guardian ad litem is justified. None of these standards dictates that, in this instance, the court should depart downward from the basic preponderance of the evidence standard.
Several factors dictate to the contrary. First, when in civil cases the interests at stake are more than economic and involve individual liberties, such as the freedom to make decisions, the standard of proof is usually “clear evidence” (W. v M., NYLJ, July 28, 1997, at 28, col 5, supra) or “ ‘clear, unequivocal and convincing’ ” evidence (Addington v Texas, 441 US, supra, at 424): more than a preponderance. The standard of proof represents the value placed on the liberty interest at stake and the degree to which the risk of an erroneous restriction on that liberty must be minimized. (Supra, at 423, 425; see, Mathews v Eldridge, 424 US 319, 335 [1976].) Here the liberty interest, freedom to make decisions, is unquestionably important, but the extent to which a guardian ad litem may restrict that freedom is limited. Yet, given that the elements of proof required to restrict that freedom by a guardian ad litem are relatively easy to establish, a high amount of that proof might not impose an undue burden. (E.g., Hargrave Assocs. v Dolan, NYLJ, Oct. 22, 1997, at 30, col 2 [Civ Ct, NY County]; Grasso v Matarazzo, NYLJ, Apr. 8, 1998, at 32, col 3, supra; Jennie Realty Corp. v Sandberg, NYLJ, July 21, 1993, at 23, col 5, supra.)
Balancing these concerns, a guardian ad litem is justified when, based on a preponderance of the evidence, the court concludes that a party’s condition impedes her ability to protect her rights. (See, Kalimian v Driscoll, NYLJ, July 20, 1992, at 23, col 4, supra.) To be “substantial” enough evidence (Palaganas v D.R.C. Indus., 64 AD2d 594, supra), or to “tend[ ] to show” that a party is unable to protect her rights (Urban Pathways v Lublin, 227 AD2d 186, supra; Matter of Casey J., 251 AD2d 1002, supra), the evidence must be at least “a mere preponderance.” (Addington v Texas, 441 US, supra, at 423, 426, 427.)
*735 IV. THE APPOINTMENT
The preponderance of evidence in the record persuasively supports the conclusion that V.K. is incapable of adequately defending her rights in this case. Dr. Magid evaluated Ms. K. on December 24, 1998, a few weeks before the motion. His report fully supports a finding that she is incapable of defending herself in this proceeding. Petitioner does not dispute any of the facts supporting this finding. Respondent has failed to appear at any point in the proceeding.
Based on this record, the court appoints Mark Altschul, Esq. guardian ad litem to appear for respondent and safeguard her interests in this proceeding. Mr. Altschul is from the list of candidates established by the Chief Administrator of the Courts (Rules of Chief Judge [22 NYCRR] § 36.1 [a]; § 36.2 [a]); qualifies under section 36.1 (c); and has completed all curricula required by the Chief Administrator for appointment as a guardian ad litem. (Rules of Chief Judge [22 NYCRR] § 36.5; see, e.g., Matter of St. Luke’s-Roosevelt Hosp. Ctr., 159 Misc 2d, supra, at 945.) Mr. Altschul consents to the appointment and is financially able to answer to respondent for any damages she may sustain due to his misconduct or negligence in defending this proceeding. (CPLR 1202 [c]; see, e.g., Henriquez v Cook, NYLJ, Feb. 10, 1999, at 26, col 6 [Sup Ct, NY County].)
The court assumes that Dr. Magid used only information accepted as reliable in his profession as the basis for his opinions. (People v Wernick, 89 NY2d 111, 115-118 [1996].) It is possible, however, that more reliable sources of information may be found than his single interview with Ms. K. in her building lobby and discussion with the doormen. It is conceivable that on the day of Dr. Magid’s visit, Ms. K. may have thrown on an inappropriate mixture of clothes to make an unexpected quick trip downstairs, and her inappropriate behavior and incoherence may have been the result of an episodic overindulgence in alcohol. While these explanations are too improbable to change the court’s decision to appoint a guardian ad litem now, the court directs the guardian ad litem, before the next court appearance, to visit and interview Ms. K. and, should he find evidence that she may be capable of adequately defending her rights or that would warrant further expert assessment, to report that information to the court. These additional procedures should minimize any risk of an erroneous restriction on Ms. K.’s freedom of decision making. (Addington v Texas, 441 US, supra, at 423, 425; Mathews v Eldridge, 424 US, supra, at 335.)
*736 Before the next appearance, Mr. Altschul is also to file written consent to the appointment and an affidavit showing his ability to answer for any negligence or misconduct. (CPLR 1202 [c].) The guardian ad litem also must comply with the certification and reporting requirements of 22 NYCRR 36.1 (d) and 36.3 (a).
V. THE DEFAULT JUDGMENT
Petitioner opposes vacatur of the default judgment on the ground that DSS offers no excuse for not making this motion until January 12, 1999, after judgment, on the eve of respondent’s eviction. Petitioner presents correspondence showing DSS had notice of both respondent’s condition and the pendency of the eviction proceeding. Relying on CPLR 5015 (a) (1), petitioner also claims respondent lacks a meritorious defense.
Even if CPLR 5015 (a) (1) were applicable, respondent’s inability to defend her rights as a tenant constitutes excusable default. As for the merits of her defenses, they can only be determined once she is provided capable defense of her rights.
To provide respondent capable defense of her rights, the court “may appoint a guardian ad litem at any stage in the action.” (CPLR 1202 [a].) Furthermore, “[n]o default judgment may be entered against an adult incapable of adequately protecting his rights for whom a guardian ad litem has been appointed.” (CPLR 1203.) Thus wherever a guardian ad litem has been appointed, CPLR 5015 (a) (1) does not apply.
Here the default judgment was entered before any guardian - ad litem was appointed. Nonetheless, the proceeding is not “any stage” at which an appointment may be made (CPLR 1202 [a]), permitting the default judgment to be invalidated based on CPLR 1203. The warrant of eviction has not been executed; the proceeding is still at a stage where respondent herself could move to vacate the judgment, under any of CPLR 5015 (a)’s provisions, for example. '
More significantly, wherever the court finds a party incapable of adequately protecting her rights under CPLR 1201, CPLR 1203 supplants CPLR 5015 (a), because an incapacitated person cannot knowingly and intelligently waive a substantive legal right, including the gravamen of a defaulted proceeding. (Glick v Quintana, NYLJ, Nov. 30, 1992, at 27, col 4 [Civ Ct, NY County].) No default judgment is valid ^gainst any party for whom a guardian ad litem is needed, until the guardian ad litem is appointed, even if the judgment preceded *737 the court’s determination of disability. (Palaganas v D.R.C. Indus., 64 AD2d 594, supra; Sarfaty v Sarfaty, 83 AD2d 748, 749 [4th Dept 1981]; Soybel v Gruber, 132 Misc 2d, supra, at 347.)
This situation points up the need for “a petitioner, in any proceeding, to be extremely diligent” in determining whether a party may be under a disability requiring a guardian ad litem and, if there is any question, giving the court an opportunity for an investigation and report regarding that need. (Matter of Bacon, 169 Misc 2d 858, 864 [Sur Ct, Westchester County 1996].) Otherwise all efforts and expenses in obtaining a judgment will be for naught. Petitioner must consider the risk that the court’s orders may be void “ ‘because of a jurisdictional defect occasioned by the failure to appoint a guardian ad litem’ * * * To err on the side of caution is better than risking a possible jurisdictional defect.” (Supra, at 864 [citation omitted].)
Here petitioner, knowing respondent was in need of services from DSS’ Office of Community Care and Senior Services with whom petitioner was corresponding, had notice that respondent’s ability to protect her rights may have been impaired. CPLR 1201 and 1203 placed the burden on petitioner “ ‘to bring that fact to the court’s attention and permit the court to determine whether a guardian ad litem should be appointed’ ” to protect respondent’s interests, before any issue implicating her rights was,adjudicated. (Sarfaty v Sarfaty, 83 AD2d, supra, at 749; see, Glick v Quintana, NYLJ, Nov. 30, 1992, at 27, col 4, supra.) Yet petitioner proceeded to adjudication of respondent’s rights via a default judgment, without bringing the question of her disability to the court’s attention.
A party’s failure to notify the court of an adversary’s disability before obtaining a default judgment is a fraud upon the court and a basis for vacating the judgment. (CPLR 5015 [a] [3], [4]; Matter of Bobst, 234 AD2d 7, 8 [1st Dept 1996]; Sarfaty v Sarfaty, 83 AD2d, supra, at 749.) Although no definitive determination of respondent’s disability had been made, petitioner was not permitted, by seeking a default judgment, to deprive the court of the opportunity to inquire into and determine her inability to defend. (Supra; State of New York v Getelman, NYLJ, Sept. 7, 1993, at 25, col 6 [Sup Ct, Albany County].)
On the sole basis of petitioner’s failure to uphold its obligation to bring respondent’s condition to the court’s attention, the court must vacate the default judgment. (CPLR 5015 [a] [3], .) Even without a motion, the court’s power to open its judg *738 ments for good cause and in furtherance of justice requires no less.
[Portions of opinion omitted for purposes of publication.]