Clement BOWEN, Joseph Costa, Robert Fazio, Kenneth France, Lonnie Grant, Timothy Johnson, Theodore Leabough, Thomas Mittendorf, by John Mittendorf as next friend, Howard Ziegberman, Disability Advocates, Inc., and Disability Advocates, Inc., o/b/o Patient 1, Patient 3, Patient 7, Patient 10, Patient 13, Patient 16, Patient 17, Patient 19, Patient 20, Patient 21, Patient 22, and Patient 23, Plaintiffs,

v.

Jacob RUBIN d/b/a Leben Home for Adults, Leben Home for Adults, Americare, Inc., Martin Kleinman, Diane Ahearn, Parkway Hospital, Inc., Jamille Peress and Harry Josifidis, a/k/a Harry Josfidis, Defendants.

No. CV–01–70 (JBW).

United States District Court, E.D. New York.

Aug. 24, 2001.

Lisa E. Cleary, Patterson, Belknap, Webb & Tyler, New York City, Jeanette M. Zelhof, MFY Legal Services, Inc., New York City, Timothy A. Clune, Disability Advocates, Inc., Albany, NY, for Plaintiffs.

Marcy Dorothy Sheinwold, Lewis, Johs, Avallone, Aviles & Kaufman, LLP, Melville, NY, for Jacob Rubin and Leben Home For Adults.

Joseph Cammarosano, Kopff, Mardelli, Depf, New York City, for Diane Ahearn.

James J. Girvan, Kral, Clerkin, Redmond, Ryan, Perry & Girvan, Mineola, NY, for Jamille Peress.

Barry G. Saretsky, Saretssky, Katz, Dranoff & Glass, New York City, for Jarry Josifidis.

### MEMORANDUM AND ORDER

GOLD, United States Magistrate Judge.

Plaintiffs have moved pursuant to Fed. R.Civ.P. 17 for the appointment of next friends to act on behalf of certain of the named plaintiffs. After considering plaintiffs' submissions and defendants' opposition, plaintiffs' motion is granted.

### Background [1]

This litigation concerns allegations of wrongful treatment of plaintiffs, mentally disabled individuals, while they resided at the Leben Home for Adults ("Leben Home"). The Leben Home provides long-term, comprehensive residential care to adults, many of whom depend upon the assistance of others to eat, bathe, and perform other daily functions. Many of the Leben Home residents suffer from mental disabilities and are unable to work.

In February 1998, an employee of defendant Parkway Hospital, a private, for-profit facility, made an anonymous telephone call to the New York State Commission on Quality of Care for the Mentally Disabled, alleging that groups of Leben Home residents were being brought to the hospital on a "weekly basis" to undergo prostate

1. The facts are drawn from plaintiffs' Second Amended Complaint and from the decision of the Department of Health, State Board for Professional Medical Conduct, annexed as Exhibit A to the Second Amended Complaint.

surgery. As a result, the New York State Department of Health ("DOH"), Bureau of Professional Medical Conduct, conducted an investigation. An administrative hearing was held, and a report issued. The DOH determined that in certain instances, only cursory, "triage" examinations of plaintiffs were conducted prior to their admission to Parkway for prostate surgery, and that plaintiffs were either asymptomatic or exhibited only mild symptoms. The DOH concluded that the doctors involved, defendants Jamille Peress and Harry Josifidis, had recommended unwarranted treatment and performed unnecessary surgical procedures on plaintiffs. At the close of the inquiry, the DOH found defendants Peress and Josifidis, both connected with defendant Parkway Hospital, had committed professional misconduct in performing prostate surgery on plaintiffs.

The hearing officer also concluded defendants Peress and Josifidis did not secure the informed consent of plaintiffs prior to performing the unnecessary surgery. The hearing officer did not credit defendants' claims that they provided plaintiffs a full explanation of the risks and implications of prostate surgery, particularly because some plaintiffs, by defendants' own admission, may have suffered from a mental disability. Testimony given by defendants Peress and Josifidis at the DOH hearing indicates they sought the assistance of defendant Diane Ahearn, an employee of Americare,[2] in gaining plaintiffs' trust so plaintiffs would be induced to sign the informed consent forms.

As a result of this investigation and determination, defendant Peress' medical license was revoked.[3] Defendant Josifidis' license was suspended for three years, with the suspension stayed for all but six months, and he was placed on probation for two and a half years. Subsequently, plaintiffs instituted this lawsuit, claiming defendants' conduct violated various state and federal laws, including the Americans with Disabilities Act of 1990 and 42 U.S.C. §§ 1985(3), 1986.

Under consideration now is plaintiffs' motion to appoint next friends for plaintiffs Bowen, Costa, Fazio, France, Grant, Johnson, Leabough, Ziegberman and Patients 1, 7, 10, 13, 16, 19, and 23.[4] Plaintiffs have submitted the affidavits of psychiatrists and the attorneys who seek to represent plaintiffs as guardians *ad litem*.[5] Defendants challenge plaintiffs' motion in two respects. First, they argue plaintiffs have failed to demonstrate they suffer from a mental disability requiring the appointment of guardians. Second, they claim the proposed guardians lack sufficient interest in the litigation and personal connection to plaintiffs to serve as suitable representatives. I address these points in turn.

2. Pursuant to a so-ordered stipulation dated August 10, 2001, the claims against Americare were discontinued.

3. The hearing officer had recommended Peress' license be suspended for five years. On appeal to the Administrative Review Board, Peress' license was revoked.

4. Patient 17 has indicated through counsel that he does not wish to pursue this litigation. Patients 3 and 21 are deceased. *See* Supplemental Declaration of Timothy A. Clune ("Clune Supp. Decl."), ¶¶ 5, 12. Patients 20 and 22 cannot be located. *See id.,* ¶¶ 8–10.

5. Prior to the adoption of Fed.R.Civ.P. 17(c), a distinction was made between the terms "next friend" and "guardian *ad litem*." Next friends were permitted to pursue actions on behalf of infants and incompetents, while guardians *ad litem* were permitted to defend infants and incompetents. *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* § 1572 (1990). The functions of the two representatives were nearly identical, and the terms are now used interchangeably. *See id.; von Bulow v. von Bulow,* 634 F.Supp. 1284, 1293 (S.D.N.Y.1986).

### Discussion

The procedure for the appointment of guardians is governed by Fed.R.Civ.P. 17(c), which states:

[w]henever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Plaintiffs, other than Thomas Mittendorf, who proceeds by next friend, John Mittendorf, are not represented by general guardians, and thus this Court must determine whether they are incompetent and require the appointment of next friends under Rule 17(c). State law provides the controlling authority for determining whether an individual has capacity to sue on his own behalf. *See* Fed.R.Civ.P. 17(b) (stating "[t]he capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile."); *Thomas v. Humfield*, 916 F.2d 1032, 1034–35 (5th Cir.1990) (finding state law the proper source for determining whether an individual is incompetent and in need of a guardian *ad litem* under Rule 17(c)); 4 James Wm. Moore et al., *Moore's Federal Practice* § 17.21[3][a] (stating "whenever an individual lacks capacity to sue or be sued under the law of the individual's domicile because the individual is ... incompetent, the provisions of Rule 17(c) come into play ...."); *see also Neilson v. Colgate–Palmolive Co.*, 199 F.3d 642, 656–57 (2d Cir.1999) (noting that ca-

pacity to sue is determined by reference to state law, and discussing the capacity of a representative to sue in federal and state proceedings). I turn then to New York law to determine whether plaintiffs require the representation of guardians in this action.

New York law requires that "an adult incapable of adequately prosecuting or defending his rights" have a guardian appointed on his behalf. N.Y.C.P.L.R. § 1201. The party seeking appointment of a guardian must show by a preponderance of the evidence that the individual's "condition impedes her ability to protect her rights ...." *New York Life Ins. Co. v. V.K.*, 184 Misc.2d 727, 735, 711 N.Y.S.2d 90 (N.Y.Civ.Ct.1999). The power given to a district court to appoint a guardian *ad litem* "has been broadly interpreted and has not been limited by a narrow construction of the words 'infant' or 'incompetent person.'" Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra*, § 1570. While "a person of unsound mind but not judicially declared incompetent may sue or be sued in the same manner as any other person" *Sengstack v. Sengstack*, 4 N.Y.2d 502, 176 N.Y.S.2d 337, 341–42, 151 N.E.2d 887 (1958), it is well-settled that, under New York law, a guardian *ad litem* may be appointed by a court at any stage of an action in which an adult is incapable of adequately prosecuting or defending his rights, even when no formal adjudication of incompetence has been made. *See Ciena v. State (Matter of Lugo)*, 7 N.Y.2d 939, 197 N.Y.S.2d 740, 165 N.E.2d 581 (1960); *Tudorov v. Collazo*, 215 A.D.2d 750, 627 N.Y.S.2d 419 (2d Dep't 1995).

In support of their application, plaintiffs have submitted declarations of plaintiffs' treating psychiatrists. *See* Declaration of Julia Price Rosner ("Rosner Decl."), Exs. G–J; Declaration of Timothy A. Clune ("Clune Decl."), Exs. G–J; Clune Supp.

Decl., Exs. A–F. Each declaration states that, in the psychiatrist's opinion, the party is "unable to adequately protect his own interest in this complex litigation and requires the assistance of a 'next friend' to assist him in prosecuting this litigation." The psychiatrists' declarations state the length of time the physician has treated each plaintiff, and each plaintiff's diagnosed condition. The diagnosed conditions of plaintiffs are schizophrenia, chronic undifferentiated schizophrenia, paranoid schizophrenia, and major depressive illness. According to the psychiatrists' declarations, these illnesses cause plaintiffs to reside in adult care facilities and nursing homes.

Defendants contend plaintiffs' submissions are deficient because the psychiatrists do not describe in specific terms the precise manner in which plaintiffs' medical conditions render them incapable of adequately prosecuting their claims. Defendants suggest a hearing should be held to ascertain the evidentiary support for plaintiffs' application. No hearing is required, however, in light of the record before the Court, and particularly as it is plaintiffs themselves, not the Court or their adversaries, who seek representation by next friends.

■ The court's power to appoint a guardian is limited by the Due Process Clause because plaintiffs "possess[ ] liberty interests in avoiding the stigma of being found incompetent ... and in retaining personal control over the litigation ...." *Neilson*, 199 F.3d at 651 (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)); *see also Thomas*, 916 F.2d at 1033. "To determine the amount of process due, we must weigh (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value of additional or different procedural

safeguards; and (3) the government's interest." *Neilson*, 199 F.3d at 651 (citing *Abdullah v. I.N.S.*, 184 F.3d 158, 164 (2d Cir.1999)); *see also Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18 (1976).

■ Having weighed these interests, I conclude that guardians should be appointed, and that no hearing is required before deciding plaintiffs' motion. First, plaintiffs, through counsel, seek guardians, and thus they are willing to constrain their control over this litigation and face the possible resulting stigma associated with guardianship. Moreover, the Court is in receipt of ample evidence supporting plaintiffs' claim that guardians are needed to protect their interests.

Plaintiffs have submitted the declarations of their treating psychiatrists, individuals who are in the best position to comment on plaintiffs' competency as litigants. According to the declarations, the psychiatrists have concluded plaintiffs are unable to protect their interests in this case. The pleadings and exhibits submitted during this litigation also demonstrate plaintiffs' interests would be well-served by the appointment of guardians. The allegations of plaintiffs' complaint and the evidence submitted to the DOH in connection with the administrative hearing against defendants Peress and Josifidis paint a picture of individuals requiring guidance and supervision in making difficult choices, such as those arising in the course of a lawsuit. The sum of this evidence satisfies plaintiffs' burden in proving they are in need of guardians in this action. *See Neilson*, 199 F.3d at 653 (affirming it was proper for the District Court to rely on an independent psychiatrist's examination and report regarding the plaintiff's competency); *see also Blatch v. Franco*, 97 Civ. 3918, 1998 WL 265132, at *9 (S.D.N.Y. May 26, 1998) (guardian ap-

pointed where evidence regarding party's incompetence consisted of proposed guardian's and opposing party's observations); *New York Life Ins.*, 184 Misc.2d at 735, 711 N.Y.S.2d 90 (appointing a guardian for an individual who had only a single interview with the physician and where the physician's report was unrebutted by any contrary evidence). Here, where plaintiffs have long-standing relationships with their treating psychiatrists, there is no need for additional reports from physicians who have no connection with plaintiffs and the intrusion of further medical examinations that such reports would entail.

The value of defendants' proposed procedural safeguard, a formal evidentiary hearing, would be minimal and would only waste time and resources. It is true New York state courts have suggested that where a question of fact exists as to a party's competence to proceed on his own behalf, a hearing should be conducted to determine if a guardian should be appointed. *See, e.g., Shad v. Shad,* 167 A.D.2d 532, 533, 562 N.Y.S.2d 202 (2d Dep't.1990). However, courts in this Circuit have determined a hearing is not always necessary. *See, e.g., Neilson,* 199 F.3d at 651–52; *von Bulow,* 634 F.Supp. at 1296; *see also Thomas,* 916 F.2d at 1035 (applying federal, rather than state, procedures to determine competency for purposes of appointing a guardian under Rule 17(c)). Formal hearings or submissions by doctors in addition to those made by a party's treating physician would appear to be absolute requisites only where opposing counsel or the court seek to appoint a guardian or where there is a dearth of evidence regarding the competency of the party to proceed without representation. *See, e.g., Neilson,* 199 F.3d at 652–53; *Thomas,* 916 F.2d at 1033; *Abrons v. Abrons,* 24 A.D.2d 970, 265 N.Y.S.2d 381 (1st Dep't.1965); *see also von Bulow,* 634 F.Supp. at 1296; *cf. Matter of Casey J., III,* 251 A.D.2d 1002, 674 N.Y.S.2d 239 (4th Dep't.1998). Perhaps

most significantly, it is unclear what further evidence defendants require or would seek to present, because, as discussed above, the declarations of plaintiffs' own doctors are already before the Court, and stand unrebutted by any evidence submitted by defendants. This is particularly noteworthy because defendants Leben House, Ahearn, Peress, and Josifidis have had substantial contact with plaintiffs and are, therefore, presumably in a position to challenge the declarations of plaintiffs' treating psychiatrists on their merits. Defendants have not done so, however, and thus have failed to raise any dispute of fact. Furthermore, the conclusions reached by defendants' psychiatrists would likely be cumulative or of less probative value than those of plaintiffs' treating doctors.

I also point out that this Court is under a continuing obligation to monitor and assess the work of the proposed guardians. *See Neilson,* 199 F.3d at 652. To the extent plaintiffs' interests diverge from those of their appointed guardians, or the guardians' representation is inadequate, plaintiffs may seek to remove the guardians, and the Court may choose not to approve the guardians' proposals. *See id.* (citing *Garrick v. Weaver,* 888 F.2d 687, 693 (10th Cir.1989)). It has been noted that a court itself bears ultimate responsibility for determinations made on behalf of a party represented by a guardian *ad litem. See, e.g., Noe v. True,* 507 F.2d 9, 12 (6th Cir.1974); *accord Dacanay v. Mendoza,* 573 F.2d 1075, 1079 (9th Cir.1978). Moreover, any plaintiff in this case who objects to the continued representation of a guardian on his behalf may so advise this Court at any point in the future, and the Court will reconsider the appointment in light of the plaintiff's objection. Thus, to the extent there is any risk in appointing guardians without the added safeguard of a formal hearing, it is diminished by this

Court's continued supervision of this litigation. *See Neilson,* 199 F.3d at 652 (noting that opportunities for review of guardian's progress minimized risk of erroneous deprivation). I therefore conclude plaintiffs' interests in this litigation would be best served by the appointment of guardians *ad litem,* and that no hearing is required.

Having found that plaintiffs are in need of guardians *ad litem* during this litigation, I turn to the question of which individuals should serve as their representatives. Plaintiffs submit the declarations of attorneys who wish to serve as next friends on a *pro bono* basis. *See* Rosner Decl., Exs. A–F; Clune Decl., Exs. A–F. Each attorney is admitted to practice in the State of New York and is affiliated with a firm engaged in the private practice of law.

■■■ Defendants argue the proposed guardians would not be suitable representatives because they are not family members or close friends of plaintiffs. However, a close relationship or blood tie need not exist between a proposed next friend and an individual in need of representation. The Second Circuit has construed Fed.R.Civ.P. 17(c) broadly, stating that a "next friend" "include[s] any one who has an interest in the welfare of an infant [or incompetent] who may have a grievance or a cause of action." *Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Schl. Dist.,* 873 F.2d 25, 31 (2d Cir.1989) (citing *Child v. Beame,* 412 F.Supp. 593, 599 (S.D.N.Y.1976)); *see* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *supra,* § 1572, at 513 (stating, "[t]here are no special requirements for the person suing as next friend.") In *Ad Hoc Comm. of Concerned Teachers,* the Second Circuit discussed the qualities a guardian *ad litem* should possess, stating:

> a court should consider the good faith of those claiming to speak for the infant and satisfy itself that the "next friend" is motivated by a sincere desire to seek justice on the infant's behalf. In addition, a court should explore the ability of the "next friend"—financial or otherwise—to prosecute the type of action at hand. We would not sanction any attempt to assert the legitimate rights of children as a mere pretext for advancing ulterior political or economic gains. Nor would we approve of persons who, despite their good intentions, find themselves unable to finish what they start.

873 F.2d at 30–31. The proposed guardians *ad litem* appear to meet these criteria. They are attorneys willing to serve on a *pro bono* basis. The proposed next friends are not "unwanted meddlers;" rather, plaintiffs themselves, through their counsel, have moved this Court for their appointment. The proposed guardians have met and spoken with plaintiffs, and plaintiffs do not object to their service. *See* Pl. Reply Mem., at 10.[6] Moreover, the proposed guardians, being attorneys, presumably understand their fiduciary obligations to plaintiffs and their roles as officers of the Court. *Cf. von Bulow,* 634 F.Supp. at 1295.

Defendants' contentions that kin, or close friends, might perhaps serve as better representatives, are unavailing. As an initial matter, plaintiffs reside in assisted-living residential care facilities, and not with kin or close friends, and, despite the publicity surrounding Parkway Hospital and the DOH inquiry, no family members

---

**6.** Proposed next friend Joan Lensky Robert has not yet met with Joseph Costa, the individual she wishes to represent as guardian *ad litem. See* Rosner Decl., Ex. B. Ms. Robert is hereby directed to meet with Mr. Costa at his place of residence within thirty days of the issuance of this Memorandum and Order, and supplement her declaration to note this meeting and to indicate whether Mr. Costa objects to her appointment.

have come forward to act as representatives on plaintiffs' behalf.[7] The mere fact that an individual has blood relatives, or close friends, is not sufficient reason to appoint those persons as representatives. In *Marisol A. v. Giuliani*, the court rejected defendants' argument that next friends were unnecessary because the infant plaintiffs had "other adults in their life" and instead appointed the proposed guardians, university professors, as the plaintiffs' next friends. No. 95 Civ. 10533, 1998 WL 265123, at *8–9 (S.D.N.Y. May 22, 1998). Thus, a long-term relationship between a proposed next friend and the individual in need of representation is not required. *See, e.g., Child,* 412 F.Supp. at 599 (appointing guardian *ad litem* who had met with infant plaintiffs only briefly). Indeed, because "[t]he function of the representative or guardian *ad litem* is to make decisions concerning the litigation on behalf of the minor or incompetent person . . . ." Moore, *supra,* § 17.21[3][a], an attorney might, in certain instances, prove to be the person most suited to serve as representative, particularly in a relatively complex litigation such as this. Thus, New York courts and courts within this Circuit have not refrained from appointing attorneys as guardians. *See, e.g., Blatch,* 1998 WL 265132, at *8–9; *Worrell v. Lynch,* No. 96 Civ. 5813, slip op. at 6–7 (Pollak, M.J.), *adopted* (Amon, J.) (E.D.N.Y. Apr. 29, 1998) (appointing an attorney despite sister's application to serve as a guardian *ad litem* ); *Villafane v. Banner,* 87 Misc.2d 1037, 1038, 387 N.Y.S.2d 183 (N.Y.Sup.Ct. 1976); *Kings 28 Assocs. v. Raff,* 167 Misc.2d 351, 356, 636 N.Y.S.2d 257 (N.Y.Civ.Ct.1995); *Matter of the Adoption of X,* 84 Misc.2d 770, 774, 376 N.Y.S.2d 825 (N.Y.Sur.Ct.1975).

Defendants rely on the Supreme Court's decision in *Whitmore v. Arkansas* in support of their argument against appointment of the proposed next friends. 495 U.S. 149, 163–64, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). In *Whitmore,* the Court granted certiorari to determine whether Whitmore, a death row inmate, had standing to proceed as the next friend of Ronald Gene Simmons, an individual also on death row, in a state court proceeding. Whitmore sought to appeal Simmons' death sentence, even though Simmons had knowingly and voluntarily waived his right to appeal the sentence on two separate occasions, and there was no indication that Simmons was incompetent or now sought to challenge his sentence. The Supreme Court reviewed factors other courts had relied on in determining whether next friends had standing to proceed on behalf of prisoners in the context of habeas proceedings:

> "next friend" standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another. Decisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for "next friend" standing. First, a "next friend" must provide an adequate explanation— such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested

---

**7.** The publicity surrounding the allegations involving Leben Home, Parkway Hospital, and defendants Peress and Josifidis has been considerable. *See, e.g.,* Maki Becker, *State Pulls License of Adult Home,* Daily News, May 4, 2001, at 2; Clifford J. Levy & Sarah Kershaw, *Broken Home, A Special Report: For the Mentally Ill, Chaos in an Intended Refuge,* N.Y. Times, Apr. 18, 2001, at A1; Joe Mahoney, *Nursing Home Slapped in State Health Warning,* Daily News, Mar. 30, 2001, at 4.

that a "next friend" must have some significant relationship with the real party in interest. The burden is on the "next friend" clearly to establish the propriety of his status and thereby justify the jurisdiction of the court.

495 U.S. at 163–64, 110 S.Ct. at 1727–28 (internal citations omitted). The Court concluded Whitmore lacked standing to proceed as Simmons' next friend because he failed to demonstrate Simmons suffered from a mental disability and required such representation.

Defendants press that, because the proposed guardians do not meet each of the criteria set forth in *Whitmore*, this Court should reject plaintiffs' application. As an initial matter, *Whitmore* clearly pertains to the standing of proposed next friends. Whether a representative has standing poses a slightly different question than whether the representative is a suitable guardian for the party in question. To the extent defendants challenge the next friends' standing to proceed, their arguments fail. The Court in *Whitmore* ultimately described its test for next friend standing merely as "a showing by the proposed 'next friend' that the real party in interest is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability." *Whitmore*, 495 U.S. at 165, 110 S.Ct. at 1728. Thus, at a minimum, a party seeking standing as next friend must demonstrate the individual in question is incompetent. As discussed above, plaintiffs, unlike Whitmore, have met their burden in this regard and therefore have standing to proceed.

To the extent the Supreme Court's holding in *Whitmore* may extend to the suitability of a proposed next friend, its analysis appears to be limited to the context of habeas litigation. *See Whitmore*, 495 U.S. at 164, 110 S.Ct. at 1727–28 ("[t]hese limitations on the 'next friend' doctrine are driven by the recognition that it was not

intended that the writ of habeas corpus should be availed of, as a matter of course by intruders or uninvited meddlers, styling themselves as next friends.") (omitting citations). In any event, *Whitmore* clearly does not hold that it is improper to appoint an attorney with a limited prior or personal relationship with an individual to act as his next friend. In *Whitmore*, the proposed next friend sought to appeal Simmons' sentence without Simmons' participation and even after Simmons had on two separate occasions knowingly and voluntarily waived his right to appeal. The proposed guardian was attempting to prosecute a claim in lieu of the real party in interest, who did not seek his services and who was not shown to be incompetent. Here, plaintiffs and their doctors acknowledge plaintiffs' need for representation, and have made an affirmative request for the appointment of guardians.

### Conclusion

For these reasons, plaintiffs' request for the appointment of guardians is granted in its entirety, and I hereby order that the proposed next friends be permitted to proceed on plaintiffs' behalf. With regard to plaintiff Costa, this order is conditioned upon Ms. Lensky meeting with Mr. Costa within thirty days of the date of this Order, and supplementing her declaration to note this meeting, indicating that she has explained the role of a guardian *ad litem* to Mr. Costa and that he agrees to her appointment on his behalf.

**SO ORDERED.**