Matter of Prospect Union Assoc. v DeJesus (2018 NY Slip Op 09016)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Matter of Prospect Union Assoc. v DeJesus

2018 NY Slip Op 09016

Decided on December 27, 2018

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 27, 2018
Sweeny, J.P., Manzanet-Daniels, Gische, Gesmer, Singh, JJ.


7585 570838/16 46932/15

[*1]In re Prospect Union Associates, Petitioner-Respondent,
vBienvenida DeJesus, et al., Respondents-Appellants.

Bronx Legal Services, Bronx (Sara E. Smith of counsel), for appellants.
Heiberger & Associates, P.C., New York (Lawrence C. McCourt of counsel), for respondent.

Order, Appellate Term, First Department, entered June 6, 2017, which affirmed an order of the Civil Court, Bronx County (Arlene H. Hahn, J.), dated April 18, 2016, which denied respondents tenants' motion to vacate three stipulations of settlement in the summary holdover proceeding, and an order of the same court and Judge, dated October 31, 2016, which denied respondents' motion to vacate the final judgment of possession and for a permanent stay of the warrant of eviction, unanimously modified, in the exercise of discretion, to grant respondents' motion to vacate the final judgment of possession and for a permanent stay of the warrant of eviction to the extent of granting a temporary stay of the warrant of eviction and remanding the matter to the Civil Court for a hearing on whether to permanently stay the eviction.
Tenants, a married couple, have resided in this HUD regulated, Section 8 subsidized, multifamily housing project since 1998. The wife, Mrs. DeJesus, age 54, claimed before the motion court that she suffers from a cognitive impairment and that her husband, Mr. DeJesus, age 73, has mobility limitations. He uses a cane, crutches, or a wheelchair. As discussed further below, in April 2016, a temporary Mental Hygiene Law article 81 guardian was appointed for both tenants upon a prima facie showing that they both were incapacitated and unable to provide for their personal needs and manage their property and financial affairs.
In June 2015, petitioner landlord served tenants with a notice of termination alleging that they had failed to maintain their apartment in a safe and sanitary condition. The conditions included bedbugs, keeping the apartment in a Collyer-like, cluttered condition posing a fire hazard, and failing to prepare the apartment for extermination. In September 2015, a guardian ad litem (GAL) was appointed for them by Housing Court (CPLR 1201), after this summary holdover proceeding was commenced. The GAL signed three stipulations on tenants' behalf.
In the first stipulation, dated October 22, 2015, the GAL acknowledged that extermination could not take place without proper preparation of the apartment, and agreed to effectuate the completion and return of certain forms so the landlord could inspect and have the apartment exterminated. When that did not occur, the GAL entered into a second stipulation, dated December 9, 2015, which afforded tenants more time to comply with the terms of the first stipulation. In the second stipulation, the GAL consented to entry of a final judgment of possession, but with execution of the warrant of eviction stayed until December 31, 2015 so that tenants would have another opportunity to prepare their apartment for extermination. When, once again, that did not occur, the GAL negotiated a third stipulation (dated January 6, 2016), with a further stay of eviction so that the apartment could be inspected and exterminated on January 11, 2016. Tenants failed to comply with that stipulation as well. With eviction imminent, tenants obtained legal counsel, who moved to vacate the stipulations on the basis that the GAL had exceeded her authority and tenants had not consented to the stipulations. Housing Court denied the motion and, in its April 18, 2016 order of denial, directed that the New York City Human Resources Administration's (HRA) Adult Protective Services (APS), be notified.
APS commenced an article 81 proceeding on tenants' behalf in Supreme Court, Bronx [*2]County. By order dated April 26, 2016, the court appointed Self Help Community Services, Inc. as tenants' temporary guardian [FN1] under article 81 of the Mental Hygiene Law and ordered that the guardian immediately arrange for a "heavy duty cleaning [and] extermination" of tenants' apartment. The court also ordered a stay of eviction so that the cleaning could be effectuated. HRA exterminated the apartment on June 9 and, in a follow-up inspection report dated June 17, the HRA exterminator reported that he had found no evidence of live bedbugs or roaches. Satisfied with this progress, Supreme Court extended the temporary article 81 guardianship, and granted tenants a further stay of eviction until August 12, 2016.
In Housing Court, before the stay expired, tenants moved to dismiss the judgment of possession and warrant of eviction on the basis that the article 81 guardian had cured the conditions and was in the process of applying for certain benefits and services that would permanently resolve the problem of access and the condition alleged. Landlord opposed the motion, claiming that its agent had inspected the apartment and found that it was still cluttered, but could not inspect for live vermin because the tenant asked him to leave. Housing Court denied tenants' motion in its entirety (Order October 31, 2016), stating that even if tenants had finally cured most of the conditions alleged in the termination notice, the cure was untimely. The court stated that tenants were not entitled to any postjudgment relief because their non-cooperation throughout the proceedings had "severely prejudiced" the landlord. Appellate Term affirmed both the April 8 and October 31, 2016 orders.
We affirm Appellate Term's decision with respect to Housing Court's April 18, 2016 order, denying tenants' motion to vacate the stipulations that the GAL signed on their behalf. A GAL "is not a decision-making position; it is an appointment of assistance. The GAL provides invaluable service to the ward, such as applying for public assistance or arranging clean-ups" (1234 Broadway LLC v Feng Chai Lin, 25 Misc 3d 476, 495 [Civ Ct, NY County 2009]). As opposed to a guardian under article 81 of the Mental Hygiene Law, the GAL is required to appear and "adequately assert and protect the rights" of his or her ward (New York Life Ins. Co. v V.K., 184 Misc 2d 727, 729 [Civ Ct, NY County 1999]). The record, viewed as a whole, shows that the GAL attempted to help her wards protect their rights during the proceeding by obtaining extensions of time for them to comply with landlord's demand for access to their apartment. There is no evidence that she forced a settlement or that tenants would have fared any better by going to trial. Tenants failed to meet their burden of showing that the GAL either inadvisedly entered into those stipulations or failed to look out for their best interests.
We modify, however, because we disagree with Housing Court's determination that tenants are not entitled a permanent stay of eviction because the conditions in the apartment were not timely cured or they are ongoing. Aside from blanket statements by the landlord and the court about the likelihood of an ongoing "exodus" of bedbugs into neighboring apartments, there are no affidavits by neighbors or statements by any other individuals with personal knowledge of those facts. The determination that tenants are incapable of keeping the apartment in a safe and clean condition going forward is a serious determination that was made without the benefit of a hearing and without a proper evaluation of whether the article 81 guardian's management of their personal (and property) affairs will now make a difference in their ability to stay in their home without harming others.
Under the Fair Housing Act (FHA), as amended, it is unlawful to discriminate in housing practices on the basis of a "handicap" (42 USC § 3604[f][2][A]). Handicap is very broadly defined, and a person is considered handicapped and thereby protected under the FHA if he or she:
1. Has a physical or mental impairment that substantially limits one or more major life activities, or
2. Has a record of such impairment, or
3. Is regarded as having such an impairment.
No specific diagnosis is necessary for a person to be "handicapped" and protected under the statute. In fact, the determination may even be based upon the observations of a lay person (Douglas v Kriegsfeld Corp., 884 A2d 1109, 1131 [DC 2005]). The appointment of an article 81 guardian for tenants sufficiently establishes that these tenants are "handicapped" within the meaning of the FHA, leading us to consider whether they are entitled to a reasonable accommodation. What is "reasonable" varies from case to case, because it is necessarily fact-specific (see Shapiro v Cadman Towers Inc., 844 FSupp 116 [EDNY 1994] [bladder disorder necessitated moving tenant to the top of the waiting list for an indoor parking spot], affd 51 F3d 828 [2d Cir 1995]). The overarching guiding factor, however, is that a landlord is obligated to provide a tenant with a reasonable accommodation if necessary for the tenant to keep his or her apartment. The " refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [the handicapped individual] equal opportunity to use and enjoy a dwelling'" is a discriminatory practice (see e.g. Shapiro 51 F3d at 333, quoting 42 USC § 3604[f][3][B]). A landlord does not have to provide a reasonable accommodation if it puts other tenants at risk, but should consider whether such risks can be minimized (see Sinisgallo v Town of Islip Hous. Auth., 865 F Supp 2d 307 [ED NY 2012] [a reasonable accommodation might be imposition of a probationary period after tenant with bipolar disorder attacked a neighbor]).
The circumstances before us warrant a hearing on whether tenants are entitled to a permanent stay of eviction as an accommodation. More narrowly, the issue is whether, with the involvement of the article 81 guardian and its management of their affairs, tenants can fulfill their lease obligations and avoid eviction. Housing Court failed to consider whether with ongoing supportive services and suitable monitoring tenants can continue to live an orderly existence in the apartment without harming or affecting their neighbors (RCG-UA Glenwood, LLC v Young, 9 Misc 3d 25 [App Term, 2d Dept 2005] [tenant offered evidence of his improved behavior after enrollment in a treatment program]). We remand for a hearing to determine whether the accommodations proposed by the guardian are reasonable, whether they will curtail the risk of the nuisance recurring, and whether there should be a permanent stay of eviction (see Strata Realty Corp. v Pena, __ AD3d __, 2018 NY Slip Op 07350 [1st Dept 2018]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 27, 2018
CLERK
Footnotes

Footnote 1: Although this appointment was intended to be temporary, tenants' attorney informed this Court at oral argument that it is now a permanent appointment.